# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SAMUEL FRAZIER, on behalf of himself and others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 11 C 8775 |
| US BANK NATIONAL ASSOCIATION d/b/a TRUSTEE FOR THE C-BASS MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-CB1, OCWEN FINANCIAL CORPORATION, LP, LITTON LOAN SERVICING, LP, APPLEBROOK REALTY, INC., and DOES 1-20, ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendants US Bank National Association as Trustee for the C-Bass Mortgage Loan Asset-Backed Certificates, Series 2006-CB1, Ocwen Financial Corporation, LP, and Litton Loan Servicing, LP's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part the Motion.

## BACKGROUND

Plaintiff Samuel Frazier filed this putative class action suit against Defendants US Bank National Association as "Trustee for the C-Bass Mortgage Loan Asset-Backed Certificates, Series 2006-CB1" ("US Bank"), Ocwen Financial Corporation, LP ("Ocwen"), Litton Loan Servicing, LP, ("Litton"), Applebrook Realty, Inc. ("Applebrook"), and Does 1-20, alleging

violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 *et seq.*, as well

as common law conversion and trespass to land and chattels claims. (R.1, Compl. ¶¶ 67-115.)

Plaintiff further seeks injunctive and declaratory relief. (*Id.* ¶ 3.)

## I. Parties

For the purposes of this Motion, the Court accepts the following facts as true. Plaintiff

Samuel Frazier is an Illinois resident. (*Id.* ¶ 4.) US Bank is an "FDIC-insured financial

institution" that "owns or purports to own home loans and investments secured by properties."

(*Id.* ¶ 5.) US Bank is the trustee to the Pooling and Servicing Agreement ("P&S Agreement"),

which allegedly "gover[ns] assets, securities, and/or ownership interests inclusive of Plaintiff's

subject mortgage." (*Id.*) As such, US Bank is also the legal holder of Plaintiff's mortgage. (*Id.*)

Litton Loan Servicing is a "residential mortgage servicer," including for the P&S Agreement.

(*Id.* ¶ 6.) Ocwen is a "leading provider of residential and commercial mortgage loan servicing,

special servicing, and asset management." (*Id.* ¶ 7.) On or about September 2011, Ocwen

"acquired Litton, becoming the servicer for Litton's loans," and on or about November 2011,

Ocwen became the "servicer of record for loans previously serviced by Litton." (*Id.*) Together,

Ocwen and Litton "provided servicing for US Bank, and administered, managed and/or ordered

services to be performed for homes securing loans in delinquency, default, and/or foreclosure,

including for Plaintiff's home." (*Id.* ¶ 22.) Applebrook Realty is an Illinois real estate company

that "engages in the sale and management of single family homes and apartment buildings, and

assists lenders in the disposition and management of real estate in defaulted and/or foreclosed

status." (*Id.* ¶ 8.)

## II.    Factual Allegations

Prior to August 2008, Plaintiff undertook a loan to finance the purchase of his home at 3446 W. Jackson Boulevard in Chicago, IL, ("the Property") with the Property as the "purported security interest for the mortgage." (*Id.* ¶ 19.) On or around August of 2008, Plaintiff defaulted on the loan. Subsequently, US Bank, as the purported trustee of the security instrument into which Plaintiff's mortgage was bundled, "sought to judicially foreclose on Plaintiff's home." (*Id.* ¶ 19.) In November 2008, US Bank filed a foreclosure lawsuit against Plaintiff in the Circuit Court of Cook County, Illinois. (*Id.* ¶ 19.) Mortgage Electronic Registration Systems, Inc. ("MERS") as "nominee for the mortgagee for Plaintiff's mortgage," assigned the mortgage to US Bank on December 2, 2008. (*Id.*) Pursuant to a judgment of foreclosure and sale entered on May 6, 2009, US Bank proceeded to a foreclosure sale on August 31, 2009. (*Id.*) On July 6, 2010, the foreclosure court entered an order approving the foreclosure sale and granting possession of Plaintiff's home. (*Id.* ¶ 20.) On September 7, 2011, the court vacated the foreclosure judgment, the order approving the foreclosure sale and granting possession of Plaintiff's home, the judicial sale of Plaintiff's home, as well as voided the selling officer's deed. (*Id.*)

Throughout September and October of 2009 and prior to the entry of a court order of possession for Plaintiff's home, US Bank, with its agents Litton and Ocwen, and Applebrook as a mutual agent of all three parties, entered Plaintiff's home without Plaintiff's consent or notice. (*Id.* ¶ 34.) In particular, on September 1, 2009, Defendants allegedly "evicted and dispossessed Plaintiff and his family of their home" and "discard[ed] his personal property from the premises and [threw it] into a neighboring alley and into the trash." (*Id.* ¶ 35.) In response to Plaintiff's

requests to stop the eviction, "Defendants' agents ignored Plaintiff's pleas and insisted that they had the court's permission to evict the Frazier family and to discard their personal property." (*Id.* ¶ 35.) Plaintiff then called the police. Subsequently, Defendants' agents allegedly falsely informed the police that they had authority from the court to evict Plaintiff and his family. (*Id.* ¶ 37.) During September of 2009, Plaintiff also alleges that after forcibly entering Plaintiff's home, Defendants "stripped Plaintiff's home of its piping, water heater, and similar equipment" and "locked Plaintiff and his family out of the property." (*Id.* ¶ 38.) In and after October of 2009, Defendants and their agents continued to perform such services on Plaintiff's home, including "disconnecting pipes and/or shutting off one or more utilities." (*Id.* ¶ 39.) Defendants' performance of these and other property services continued "before 30 days after a court order approving the sale and granting possession of Plaintiff's property." (*Id.* ¶ 40.) From September 2009 to September 2011, Plaintiff and his family remained locked out of their home and Defendants retained control over the Property and the personal property and fixtures at the premises. (*Id.* ¶ 44.)

On September 11, 2011 and October 16, 2011, following the vacatur of the foreclosure judgment, order for possession, and order approving the sale of the Property, Defendants' agent showed the Property to potential real estate investors without Plaintiff's consent. (*Id.* ¶¶ 41, 42.) When Plaintiff confronted Defendants' agent, the agent informed Plaintiff that the Property appeared on a real estate listing. (*Id.*) On April 18, 2011, the Circuit Court of Cook County, Illinois issued an agreed order voluntarily dismissing Plaintiff's FDCPA and other claims against

Defendants in the foreclosure action on the Property.[1]  (*See* Defs.' Mem. Law, Exs. A,B.)  On

December 9, 2011, Plaintiff filed the present putative class action suit in federal court on behalf

of himself and others similarly situated.  Plaintiff alleges jurisdiction under 28 U.S.C. § 1331 and

15 U.S.C. § 1692, the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), as well as

supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a

claim upon which relief may be granted."  *Hallinan v. Fraternal Order of Police of Chi. Lodge

No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  Under Rule 8(a)(2), a complaint must include "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2).  The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of

what the claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544,

555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted).  Under the federal notice

pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief

above the speculative level."  *Twombly*, 550 U.S. at 555.  Put differently, a "complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

(quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[1] The defendants in that case are the same as in the present action, except that the state court case did not name Defendant Ocwen and included two individual defendants not named in the present case.  (Defs.' Mem. Law, Ex. A.)  Accordingly, the Court may take judicial notice of the state court order as a matter of public record on a motion to dismiss.  *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 494 (7th Cir. 2011).

for the misconduct alleged." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934-35 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted)). "The complaint 'must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Id.* at 935 (citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663,668 (7th Cir. 2008)). "[A] plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (citing *Twombly*, 550 U.S. at 556 (internal quotation omitted)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2007) (internal quotation and citation omitted). "To meet this plausibility standard, the complaint must supply 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Id.* (citing *Twombly*, 550 U.S. at 556). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *See AnchorBank*, 649 F.3d at 614.

## ANALYSIS

Plaintiff asserts claims under the FDCPA and the ICFA, as well as Illinois common-law claims for conversion, trespass to chattels, and trespass to land. Plaintiff further seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 and injunctive relief.

Defendants argue that Plaintiff fails to state a claim generally on two grounds: (1) Plaintiff's Complaint relies on impermissible group pleading in violation of Federal Rule of

Civil Procedure ("Rule") 8(a); and (2) Plaintiff fails to sufficiently allege an agency relationship between Defendants.

## I. Group Pleading

Defendants argue that Plaintiff's Complaint relies upon group pleading in violation of Rule 8(a) by alleging that "Defendants" collectively or their "agents" committed certain acts rather than specifying which Defendants committed which acts. This argument is unpersuasive for several reasons. To satisfy Rule 8(a), a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). Generally, challenges based upon group pleading arise in the context of fraud claims. *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008) (rejecting specific version of group pleading doctrine in pleading securities fraud claims); *F.D.I.C. v. Saphir*, No. 10 C 7009, 2011 WL 3876918, at *8 (N.D. Ill. Sept. 1, 2011) ("[T]he case law the court has located expresses disapproval of 'group pleading' in cases alleging fraud—not at issue here."). Here, Defendants challenge the entirety of Plaintiff's Complaint on the basis of group pleading, and not only those allegations that may pertain to fraud.[2] Moreover, the cases Defendants cite in which a complaint fails for group pleading are readily distinguishable for their lack of factual detail. *See, e.g., Tapang v. Wells Fargo Bank, N.A.*, No. CV-12-02183-LHK,

---

[2] In their Complaint, Plaintiff alleges that Defendants' conduct is "unfair and/or deceptive within the meaning of the ICFA." (Compl. ¶ 98.) In its Response to Defendant Applebrook's separate Motion to Dismiss, however, Plaintiff contends that its ICFA claim is based upon "unfair" as opposed to "deceptive" conduct, and thus is not subject to the heightened pleading standard for fraud-based ICFA claims under Federal Rule of Civil Procedure 9(b). (R. 70, Pl. Resp. to Def.'s Mot. to Dismiss and Mot. for More Def. Stmt. 8.); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). Accordingly, for the purposes of this Motion, the Court will construe Plaintiff's Complaint as not alleging fraudulent conduct under the ICFA.

2012 WL 3778965, at *5 (N.D. Cal. Aug. 30, 2012) (noting the "full extent of Plaintiff's [FDCPA] allegations consists of a single, vague, and conclusory sentence."). Although Plaintiff refers to "Defendants" and their "agents" collectively, Plaintiff has provided sufficient factual detail about the nature of his allegations and about each Defendant to provide fair notice of his claims. (*See* Compl. ¶¶ 16-55); *Jeffries v. Dutton & Dutton, P.C.*, No. 05 C 4249, 2006 WL 1343629, at *3 (N.D. Ill. May 11, 2006) ("The Court easily can discern from the Complaint that Plaintiff complains about Defendants' actions related to the home mortgage loan issued by Fremont Investment and Loan."); *Umoh v. Marks*, No. 1:09-CV-838 GLS/RFT, 2010 WL 2651939, at *2 n.2 (N.D.N.Y. June 25, 2010) ("While the proposed pleading frequently borders on impermissible 'group pleading,' the court is unable at this point to conclude that such allegations should be dismissed—particularly since there are only three defendants named, which Umoh alleges were acting either together or interchangeably.") Thus, Plaintiff's Complaint does not fail for group pleading.

## II.     Agency Allegations

Next, Defendants argue that Plaintiff has failed to sufficiently allege an agency relationship between Defendants. Specifically, Defendants contend that the Complaint lacks allegations showing that Defendants "control[led] the method or manner in which any alleged agent accomplished the agent's task." (*See* Defs.' Mem. 12.)

"Agency is a consensual, fiduciary relationship between two legal entities created by law, where the principal has the right to control the activities of the agent, and the agent has the power to conduct legal transactions in the name of the principal." *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 758 (7th Cir. 2008) (applying Illinois law); *Chemtool, Inc. v.*

8

*Lubrication Techs., Inc.,* 148 F.3d 742, 745 (7th Cir. 1998) ("The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal.")  "To plead the existence of an agency relationship, a plaintiff must allege a factual predicate to create the inference of agency." *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009); *Sefton v. Toyota Motor Sales U.S.A.*, No. 09 C 3787, 2010 WL 1506709, at *3 (N.D. Ill. Apr. 14, 2010) ("[P]leading the existence of an agency relationship requires more than a general statement that such a relationship exists.").  "The question of whether an agency relationship exists is normally a question of fact." *See Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 935 (7th Cir. 2011).

Here, Plaintiff has alleged sufficient factual predicates for agency relationships.[3] Plaintiff's allegations involve three sets of agency relationships: (1) Defendants Ocwen and Litton as agents of US Bank; (2) Defendant Applebrook as a mutual agent of Ocwen, Litton, and/or US Bank; (3) the Doe Defendants as agents of all four Defendants.  (Compl. ¶¶ 10, 21, 24.)  Specifically, Plaintiff has alleged that "Litton and Ocwen provided servicing for US Bank" and that US Bank, Litton, and Ocwen "contracted with mortgage field service companies" such

---

[3] The parties did not address whether federal common law or Illinois law should govern Plaintiff's agency allegations with respect to its FDCPA claim and relied on cases applying Illinois law.  The Seventh Circuit has recognized that both bodies of law are generally consistent with the principles of the Restatement of Agency. *See Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000).  For the purposes of this Motion, the Court notes that Plaintiff has sufficiently alleged an agency relationship under both the Restatement principles and Illinois law. *See* Restatement (Third) Of Agency § 1.01 (2006) ("Agency is the fiduciary relationship that arises when one person . . . manifests assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.").

as Applebrook and the Doe Defendants, which "provide lender field services or default-related services for homes delinquent . . . upon which lenders like US Bank are seeking to collect." (*Id.* ¶¶ 22-24.) Plaintiff's allegations also raise a plausible inference that Defendants controlled the method or manner of their respective agents' tasks. Plaintiff, for example, alleges that US Bank, Ocwen, and Litton authorized Applebrook and the Doe Defendants to provide property services specifically "during delinquency or default periods and during the judicial foreclosure process." (*Id.* ¶ 27.) Furthermore, Litton and Ocwen "track Plaintiff's and other borrower loans assigned to delinquency, default, and/or foreclosure status *en masse*." (*Id.* ¶ 25.) Finally, Plaintiff alleges that US Bank, Ocwen, and Litton "have systematized their process of foreclosing on properties like [Plaintiff's]" and "have failed to have in place safeguards and adequate means to prevent premature possession of properties in foreclosure." (*Id.* ¶ 53.) In particular, Defendants "established a policy and practice, whereby . . . 'property servicers' are automatically tasked with the job of performing [property services] when Plaintiff and Class Members become delinquent on their loan payments." (*Id.* ¶ 62.) Viewing these allegations in the light most favorable to Plaintiff, Plaintiff has alleged sufficient facts to support that Defendants controlled the method of the work of their respective agents and that those agents could affect the legal relations of their principals. *See Sindles v. Saxon Mortg. Servs., Inc.*, No. 11 C 7224, 2012 WL 1899401, at *9 (N.D. Ill. May 22, 2012) (agency allegations insufficient that were inconsistent with the complaint and lacked a factual predicate); *Whitley*, 607 F. Supp. 2d at 895-96 (agency allegations sufficient when broker utilized various materials of lender to process loans and both parties shared benefit of premiums). Plaintiff's agency allegations, therefore, do not fail for lack of specificity.

### III.    Count IV: FDCPA Claim

In challenging Plaintiff's FDCPA claim, Defendants argue first that Plaintiff has failed to sufficiently allege that Defendants are "debt collectors" or engaged in "debt collecting activities" within the meaning of the FDCPA, and alternatively, that the statute of limitations bars Plaintiff's claim.  Because the statute of limitations issue is dispositive of part of Defendants' Motion, the Court will consider it first.

#### A.    Statute of Limitations

A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses.  *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).  Nonetheless, "when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."  *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (motion to dismiss appropriate where "complaint plainly reveals that an action is untimely under the governing statute of limitations").

The FDCPA provides a one-year statute of limitations.  *See* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs.").  Plaintiff filed the present action on December 9, 2011.  (Compl. ¶ 1.)  Thus, the FDCPA violation that is the basis for Plaintiff's claim must have occurred on or after December 9, 2010.   Defendants argue that "virtually all of the conduct in the complaint is alleged to have occurred before December 9, 2010," except for Defendants' "purported showing of the property to investors on October 16, 2011."  (Defs.' Mem. 7.)  In response, Plaintiff raises two arguments: (1) the Illinois savings statute tolled the statute of

limitations for one year following the voluntary dismissal of the suit from Illinois state court on April 18, 2011; (2) the continuing violation doctrine brings Defendants' alleged conduct within the limitations period.

### 1. Application of Illinois Savings Statute

First, Plaintiff contends that Section 13-217 of the Illinois Code of Civil Procedure, the "Illinois savings statute," applies and extends the statute of limitations governing Plaintiff's claim. *See* 735 ILCS 5/13-217a. Plaintiff contends that Section 13-217 allows the refiling of a suit within one year from the date of voluntary dismissal, and thus permits his FDCPA claim, which the state court dismissed without prejudice pursuant to an agreed order for voluntary dismissal on April 18, 2011. (Defs.' Mem., Ex. A.) Thus, according to Plaintiff, the Illinois savings statute extended the time for refiling his FDCPA claim in federal court until April 18, 2012.

Plaintiff's argument is unpersuasive. Generally, courts only borrow state limitations and tolling periods for federal statutes that do not provide their own statute of limitations. *See Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 562 (7th Cir. 2011) ("Federal law determines the tolling effect of a suit governed by a federal statute of limitations."); *United Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 563 F.3d 257, 269 (7th Cir. 2009) ("Because the RLA has no statute of limitations for actions under Section 2, [f]irst, we borrow the six-month statute of limitations from section 10(b) of the National Labor Relations Act." (citations omitted)). In addition to providing no authority for the proposition that the FDCPA incorporates a state tolling provision, Plaintiff fails to reconcile his position with *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011), in which the Seventh Circuit noted that the Illinois savings statute

would not apply to a federal question claim controlled by a federal statute of limitations. *See* 657 F.3d at 590 ("The instant case is governed by a federal statute of limitations, however, so [the "coordinate tolling rule set forth in Section 5/13–217 "] does not help the plaintiffs here."). The Illinois savings statute, therefore, does not apply to Plaintiff's FDCPA claim.

### 2. "Continuing Violation" Doctrine

In the alternative, Plaintiff argues that the "continuing violation" doctrine extends the limitations period on Plaintiff's claim.

"The continuing violation doctrine is usually invoked to defeat a statute of limitations bar for conduct that falls outside the relevant period." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011). The purpose of the doctrine "is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008) (noting the doctrine concerns not a "continuing" but a "cumulative" violation). Alternatively stated, "the key inquiry is whether [the alleged violation] . . . is a fresh act each day, or whether it was a discrete act that took place upon the first [occurrence] that merely had lingering consequences." *See Savory*, 469 F.3d at 673.

Here, Plaintiff argues that the "continuing violation" doctrine applies because "Plaintiff was effectively locked or kept out of his home . . . by Defendants from Sept. 2009 to Sept. 2011" and that the "continuing nature of this conduct . . . makes the FDCPA claim timely." (Pl.'s Mem. 8-9.) As the Seventh Circuit has made clear, however, mere "continuation" of challenged conduct is not sufficient to invoke the doctrine. *See Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) ("The continuing violation doctrine, however, does not apply to 'a series of discrete acts, each of which is independently actionable, even if those acts form an overall

pattern of wrongdoing.'"); *Limestone Dev. Corp.*, 520 F.3d at 801. Rather, the doctrine applies

to conduct that initially is "too trivial to count as actionable," but upon escalation, "the entire

series [of conduct] is actionable." *Limestone Dev. Corp.*, 520 F.3d at 801 (noting the typical

example of workplace harassment); *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) ("This

court has applied the continuing violation doctrine when the plaintiff could not reasonably be

expected to perceive the alleged violation before the limitations period has run, or when the

violation only becomes apparent in light of later events."). Plaintiff's reliance on the continuing

violation doctrine for the allegations of the discrete act of Defendants' locking Plaintiff out of his

home that began in September or October of 2009, (Compl. ¶¶ 38, 44), therefore, is misplaced.

*See Savory*, 469 F.3d at 673 (holding prisoner's continued lack of access to physical evidence

was not a continuing violation but rather the "natural consequence of the discrete act that

occurred when Peoria first denied access to the evidence"); *Air Line Pilots Ass'n, Int'l*, 563 F.3d

at 269 (applying continuing violation doctrine when actions constituted a "'multi-faceted and

ongoing slowdown campaign' that violated the RLA outside of the limitations period and

continued to occur and continued to cause new harm during the limitations period").

Nor does the continuing violation doctrine apply to any of Plaintiff's other allegations.

As is clear from the face of the Complaint, Plaintiff alleges a series of discrete actionable

acts–namely, Defendants' unlawful entry of Plaintiff's property, the stripping of pipes and

removal of other property from Plaintiff's home, and Defendants' false representation to the

police that they were authorized to enter Plaintiff's house– that began in September or October

of 2009 and continued until approximately "July/August 2010" or until August 6, 2010.[4]

(Compl. ¶¶ 35-37, 45.) At the latest, therefore, the one-year statute of limitations for any FDCPA claim based upon this conduct ran by August 6, 2011–several months before Plaintiff's filing of the current suit in federal court on December 9, 2011. (*Id.* ¶ 1.) Thus, the continuing violation doctrine does not apply to Plaintiff's FDCPA claim.

Moreover, the cases Plaintiff cites in which district courts have applied the continuing violation doctrine to FDCPA claims are factually distinguishable or largely rely on the proposition that the continuation of the conduct is sufficient to invoke the doctrine. *See Matthews v. Capital One Bank*, No. 1:07-CV-1220-DFH-TAB, 2008 WL 4724277, at *3 (S.D. Ind. Oct. 24, 2008) (deferring ruling on continuing violation doctrine and statute of limitations at 12(b)(6) stage where court could not determine dates on which violation occurred); *Hoang v. Worldwide Asset Purchasing, LLC*, No. 09-185-DRH, 2009 WL 3669883, at *2 (S.D. Ill. Nov. 2, 2009) (relying on *Matthews* and concluding FDCPA claim based upon collection activities and lawsuit constituted a continuing wrong that was not completed until dismissal of the lawsuit).

Notwithstanding the inapplicability of the continuing violation doctrine, the FDCPA statute of limitations does not bar all of the alleged conduct in Plaintiff's Complaint. Plaintiff further alleges that on September 11, 2011 and October 16, 2011, after the state court vacated the foreclosure judgment, order for possession, and order approving sale of the Property, Defendants' agents showed the Property to potential real estate investors without Plaintiff's notice or consent. (Compl. ¶¶ 42-43.) Assuming Plaintiff has stated a claim for this conduct, the

_____

For the sake of clarity, the Court adopts this alternate formulation of Plaintiff's allegation that the unlawful property services continued "before 30 days after a court order approving the sale and granting possession of Plaintiff's home was entered on July 6, 2010." (Compl. ¶ 40.)

one-year statute of limitations would not bar not it, as the conduct occurred only a few months before Plaintiff filed suit on December 9, 2011.

**B.  Allegations of Unlawful Showing of Property to Potential Real Estate Investors in September and October of 2011**

Next, Defendants argue that Plaintiff's remaining allegations are insufficient because they fail to establish that Defendants are "debt collectors" or engaged in "debt collecting" activities under the FDCPA.  The Court will consider each argument in turn.

**1.  "Debt Collector" Allegations**

The purposes of the FDCPA are "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  In order for the FDCPA to apply, the defendant must satisfy the requirements of a "debt collector."  *See Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009) ("The FDCPA regulates only the conduct of 'debt collectors.'").  The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The statute includes within the definition for the purposes of § 1692f, "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  *Id.*  Section 1692f, in turn, provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," including "[t]aking or threatening to take any nonjudicial action to effect dispossession or

16

disablement of property if," among other circumstances, "there is no present right to possession of the property claimed as collateral through an enforceable security interest."  15 U.S.C. § 1692f(6)(A).  The statute excludes from the definition, "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  *Id.* § 1692a(6)(F)(iii).

Under the FDCPA, "creditors" are distinct from "debt collectors."  *Ruth*, 577 F.3d at 796 (citing *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)).  "In general, a creditor is broadly defined as one who 'offers or extends credit creating a debt or to whom a debt is owed,' whereas a debt collector is one who attempts to collect debts 'owed or due or asserted to be owed or due another.'"  *Schlosser*, 323 F.3d at 536 (quoting 15 U.S.C. § 1692a(6), (a)(4)).  As *Schlosser* explained, these definitions are generally "mutually exclusive," except "for debts that do not originate with the one attempting collection, but are acquired from another" because "the collection activity related to that debt could logically fall into either category."  *Id.*  With respect to an assignee of a debt, an assignee qualifies as a debt collector if "the debt was in default at the time it was acquired" by the assignee.  *Ruth*, 577 F.3d at 796.

Defendants contend that Plaintiff's "debt collector" allegations are deficient for several reasons.  First, looking to the exclusion from the definition of debt collectors for persons attempting to collect debts "not in default at the time it was obtained by such person," Defendants argue that Plaintiff's allegations regarding the assignment of the mortgage to US Bank are insufficient.  Relying primarily on *Siwulec v. Chase Home Fin., LLC*, No. 10-1875, 2010 WL 5071353, at *5 (D.N.J. Dec. 7, 2010), Defendants contend that Plaintiff's allegations are "conclusory," in that they fail to provide sufficient facts showing that Defendants "obtained"

the debt at the time Plaintiff was in default. *Siwulec*, however, is distinguishable, because there the plaintiff failed to allege the date when the debt was obtained or the date of default. *Siwulec*, 2010 WL 5071353, at *5. Here, Plaintiff alleges that MERS assigned the mortgage to US Bank on December 2, 2008 and that Plaintiff "purportedly defaulted on his mortgage for said home on or about August 2008." (Compl. ¶¶ 18-20.) At this early procedural posture, Defendants' argument that US Bank falls within the exclusion of the definition of a debt collector thus fails.[5]

Nor does *Bailey v. Sec. Nat'l Serv. Corp.*, 154 F.3d 384, 387 (7th Cir. 1998), which Defendants cite in their briefs, require a different result. In *Bailey*, the Seventh Circuit concluded at summary judgment that the defendant mortgage servicers could not be debt collectors with respect to a letter concerning payments due under a renegotiated forbearance agreement that superceded a loan in default because the defendants were attempting to collect under the forbearance agreement and not the original defaulted loan. *See Bailey*, 154 F.3d at 388. Here, Plaintiff's allegations do not raise a comparable issue as to which alleged debt Defendants seek to collect upon.

---

[5] Defendants belatedly argue in their Reply that Plaintiff's allegations regarding when Defendants "obtained" the debt in question are without merit because the P&S Agreement, which Defendants attach only to their Reply, allegedly establishes that "all rights, title, and interest [are] conveyed to U.S. Bank on behalf of Trust concurrently with [P&S Agreement]" and that US Bank "held an interest in the underlying debt as early as 2006." (Defs.' Reply 3.) The Court will not consider the P&S Agreement for several reasons. First, as Defendants failed to raise this argument based upon the provision of the P&S Agreement or present the P&S Agreement until their Reply, they have waived it. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Moreover, even if Defendants had properly raised the P&S Agreement, it is not clear that the provision in question resolves the issue of when Defendant US Bank obtained the debt for purposes of the FDCPA. The Court, therefore, declines to consider the P&S Agreement in ruling on the Motion.

Second, with respect to Ocwen and Litton, Defendants argue that Plaintiff's allegations are similarly insufficient because Plaintiff has failed to allege that Litton or Ocwen as agents of US Bank "acquired an interest in servicing the debt when it was in default." (Defs.' Mem. 4.) According to Defendants, this standard for when an agent of a debt collector may be liable as a debt collector follows from *Carter v. AMC, LLC*, 645 F.3d 840, 844 (7th Cir. 2011).

Defendants' reading of *Carter* is not persuasive. In *Carter*, the Seventh Circuit, after determining that an agent of a debt collector as well as a debt collector may "obtain" a debt within the meaning of § 1692a(6)(F)(iii), clarified that a servicing agent of an alleged debt collector "obtains" the debt when the agent "acquires the *authority* to collect the money on behalf of another." *Carter*, 645 F.3d at 844. By analogy, therefore, the relevant inquiry in this context is whether Defendants Ocwen and Litton as agents of US Bank "acquired the authority" to perform property services such as showing the Property to potential real estate investors when Plaintiff was in default. Here, Plaintiff alleges that he defaulted on his mortgage in August of 2008 and that on September 11, 2011 and October 16, 2011, Defendants' agents showed the Property to potential real estate investors without Plaintiff's consent. (Compl. ¶¶ 42-43.) Plaintiff further alleges that "[w]hen a borrower falls into . . . delinquency, default, and/or foreclosure status on a home loan, [Defendants] order various lender field services or 'default property services' to be performed on Plaintiff's and other borrowers' properties." (*Id.* at 25.) Viewing the allegations in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged that Ocwen and Litton as agents of US Bank "acquire[d] the authority" to show the Property to potential real estate investors after Plaintiff defaulted on his mortgage. Thus, Defendants' argument fails.

## 2.    Debt Collection Activities

Next, Defendants argue that Plaintiff has failed to sufficiently allege that Defendants' conduct occurred "in connection with the collection of a debt," as required by the FDCPA. Specifically, Defendants contend that because the alleged conduct occurred "in connection with the enforcement of a security interest,"–mortgage foreclosure–it falls outside the scope of "debt collection" activities.  In response, Plaintiff argues that Defendants' contentions are misguided because Plaintiff has stated a claim under § 1692f(6)(A)–which brings within the definition of a debt collector those whose business is the enforcement of security interests– and prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," including "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if," among other circumstances, "there is no present right to possession of the property claimed as collateral through an enforceable security interest."  15 U.S.C. § 1692f(6)(A).  Leaving aside those allegations barred by the statute of limitations, Plaintiff seeks recovery for Defendants' September and October 2011 showing of the Property to potential real estate investors without Plaintiff's notice or consent "after the foreclosure judgment, order for possession, and order approving the sale of Plaintiff's property were vacated."  (Compl. ¶¶ 42, 43, 49.)  Thus, according to Plaintiff, these allegations are distinct from "judicial" prosecution of a mortgage foreclosure action and thus constitute "nonjudicial action" within the meaning of § 1692f(6)(A).

Indeed, Defendants' argument fails for several reasons.  First, the cases that Defendants cite for the proposition that conduct occurring in connection with mortgage foreclosure is not actionable under the FDCPA involve provisions other than § 1692f(6), *see Long v. One W. Bank,*

*FSB*, No. 11 C 703, 2011 WL 3796887, at *1 (N.D. Ill. Aug. 24, 2011) (concerning allegations

regarding defendant's failure to clarify "the proper owner of the Note and Security Deed" and

not citing § 1692f); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004), or different

factual allegations from those of Plaintiff.   *Hulse v. Ocwen Fed. Bank*, *FSB*, 195 F. Supp. 2d

1188, 1203 (D. Or. 2002) (allegations that defendant wrongfully attempted to foreclose on

plaintiffs' property because defendant did not have a beneficial interest in the trust deed did not

violate § 1692(f)(6)).   Second, *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) even

notes that § 1692f is the exception to the general rule that "[s]ecurity enforcement activities fall

outside the scope of the FDCPA because they aren't debt collection practices."[6]  324 F. Supp. 2d

at 924 n.3.   Here, Plaintiff seeks relief–at least in part–under § 1692f(6)(A) and argues that his

allegations concern "nonjudicial" activity distinct from the prosecution of a mortgage

foreclosure action.   Thus, Defendants' reliance on these cases is misplaced.

Notwithstanding Defendants' arguments, the question remains as to whether Plaintiff's

particular allegations state a claim under § 1692f(6)(A).   The Seventh Circuit has not applied §

1692f(6)(A) outside the context of allegations of personal property repossession abuses.   *See*

*Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1087 (7th Cir. 1999).   Moreover,

---

[6] Moreover, the *Rosado* proposition that mortgage foreclosure cannot constitute debt collection under the FDCPA is not free from doubt.   *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 462 (6th Cir. 2013) ("The view adopted by a majority of district courts, and the one followed below, is that mortgage foreclosure is not debt collection. This view follows from the premise that the enforcement of a security interest, which is precisely what mortgage foreclosure is, is not debt collection. . . Despite its pervasiveness in the district courts, we find this approach unpersuasive and therefore decline to follow it" (internal citations omitted)); *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006) ("We therefore hold that a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests.").

FDCPA case law addressing activities related to mortgage foreclosure has involved different FDCPA provisions or allegations than those at issue here. *See Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 383 (7th Cir. 2010) (letters sent to induce settlement of mortgage-loan payment constituted communications in connection with a debt under § 1692c and § 1692e); *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004) (attempting to collect attorneys' fees exceeding those designated in vacated state court order did not give rise to FDCPA claim); *Transamerica Fin. Servs., Inc. v. Sykes*, 171 F.3d 553, 555 (7th Cir. 1999) (attempt to collect debt authorized by a potentially forged mortgage did not violate § 1692f(1)).

Nonetheless, the Seventh Circuit's analysis in *Nadalin* instructive. In *Nadalin*, the Seventh Circuit held that allegations that a repossession company's placing of a lien on personal property left within a repossessed vehicle in order to enforce the repossession company's fee for storing the property did not state a claim under § 1692f(6)(A). In so holding, the Seventh Circuit noted the absence of any allegation that the repossession company was acting as the lender's agent in asserting the lien over and seizing the personal property found in the vehicle. *See Nadalin*, 169 F.3d at 1087 ("ARB did not seize the plaintiff's personal property for the purpose or with the likely effect of using it to satisfy the plaintiff's debt to ARB's principal. The seizure was not a method of enforcing a debt owed to the lender."). Here, however, Plaintiff alleges that the unauthorized entry of Defendants and their agents was in furtherance of efforts to secure property and collect debts for Plaintiff's lender. (*See* Compl. ¶¶ 90-92.) Following *Nadalin*, courts in this District have recognized that a plaintiff may state a § 1692f(6) claim in the personal property repossession context when the plaintiff alleges that "[the defendant] was enforcing a security interest and did not have a present right to possess the collateral." *Jeffries v.*

*Wells Fargo Bank, NA*, No. 10-CV-5889, 2011 WL 5023396, at *6 (N.D. Ill. Oct. 19, 2011);

*Purkett v. Key Bank USA, Inc.*, No. 01 C 162, 2001 WL 503050, at *2 (N.D. Ill. May 10, 2001).

Although not applying *Nadalin*, at least one district court has permitted FDCPA allegations

similar to those of Plaintiff to survive a motion to dismiss. *See Flippin v. Aurora Bank*, *FSB*, No.

12-CV-1996, 2012 WL 3260449, at *1-2 (N.D. Ill. Aug. 8, 2012) (denying motion to dismiss

FDCPA allegations that defendants turned off water and changed locks on plaintiff's house

without a valid court order). Moreover, persuasive case law suggests that § 1692f(6) supports a

claim based upon Plaintiff's type of "nonjudicial" foreclosure-related allegations. *See Tapang v.*

*Wells Fargo Bank, N.A.*, No. CV-12-02183-LHK, 2012 WL 3778965, at *5 (N.D. Cal. Aug. 30,

2012) (assuming allegations "encompass[ing] activities 'beyond the scope of the ordinary

foreclosure process'" may give rise to an FDCPA claim); *Michaels v. Satish*, No. 10-21034-CV,

2011 WL 3439250, at *3 (S.D. Fla. July 18, 2011) (holding "section 1692f(6) applies only to

threats to take property by non-judicial action," which did not include defendants' activities

relating to the prosecution of a mortgage foreclosure action). Bearing in mind that § 1692f is a

provision of "general application" to unfair and unconscionable behavior, *see McMillan v.*

*Collection Prof'ls Inc.*, 455 F.3d 754, 764 (7th Cir. 2006), the Court will not dismiss Plaintiff's

timely allegations at this stage.

## II.     Count II: Trespass to Chattels Claim

Defendants argue that Plaintiff has failed to state a claim for trespass to chattels under

Illinois law because Plaintiff alleges "total destruction" rather than mere "interference" with the

subject property, and thus Plaintiff's trespass to chattels claim fails. In response, Plaintiff argues

that alternative pleading under Rule 8 permits him to allege both theories.

"A trespass to a chattel [under Illinois law] may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Lewis v. Weis*, No. 09 C 2219, 2012 WL 45242, at *3 (N.D. Ill. Jan. 5, 2012) (quoting Restatement (Second) Of Torts, § 217); *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005) (noting "sparse Illinois caselaw" on the tort). Conversion, however, occurs when "[o]ne who intentionally destroys a chattel or so materially alters its physical condition as to change its identity or character." *Loman v. Freeman*, 375 Ill. App. 3d 445, 458, 874 N.E.2d 542, 552 (Ill. App. Ct. 2006), *aff'd*, 229 Ill. 2d 104, 890 N.E.2d 446. The difference between the two torts "depend[s] on the extent of the alteration." *Loman*, 375 Ill. App. 3d at 458; *see Antonelli v. Sherrow*, No. 02 C 8714, 2005 WL 2338813, at *11 (N.D. Ill. Sept. 21, 2005) ("The defining element of conversion, the one that distinguishes it from a trespass to chattels, is the extent of interference with the owner's property rights.").

Plaintiff alleges that Defendants and their agents damaged, removed, or destroyed a variety of his property, including furniture, cabinets, piping, and clothing. (Compl. ¶¶ 70, 76.) With respect to certain property, Plaintiff specifically contends that Defendants and their agents "knocked holes into cabinets prior to throwing them out" and "poured an unknown damaging substance all over the clothes that they threw out," and "smashed the feet of the couch by throwing it out." (*Id.* ¶ 45.) Plaintiff further alleges that Defendants' "destruction of Plaintiff's property and fixtures" has made return of the property "impossible." (*Id.* ¶ 78.)

Although Defendants cite case law distinguishing between conversion and trespass to chattels, this case law does not explain why Plaintiff may not plead these causes of action in the alternative. *See Lewis*, 2012 WL 45242, at *4 (rejecting trespass to chattels claim on respondeat

superior grounds); *Markel Am. Ins. Co. v. Grimaldi*, No. CV 10-5447 SJF GRB, 2012 WL 1020424, at *6 (E.D.N.Y. Feb. 10, 2012) (explaining importance of distinction for statute of limitations purposes); *Sotelo*, 384 F. Supp. 2d at 1229 (noting in case without conversion cause of action that trespass to chattels applies "where plaintiff does not allege his property is in defendant's possession or has been rendered entirely worthless, but rather that it was interfered with"); Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). The Court denies Defendants' Motion as to Plaintiff's trespass to chattels claim.

## III. Declaratory Judgment

Lastly, Defendants argue that the Court should dismiss Plaintiff's declaratory judgment action because "declaratory judgment is a remedy, not an independent cause of action" and because the declaratory judgment is duplicative of Plaintiff's substantive causes of action. (Defs.' Mem. 13.)

The federal Declaratory Judgment Act ("DJA") provides that, subject to certain exceptions, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "The goal of the [DJA] is to allow for the efficient resolution of disputes by an early adjudication of the rights of the parties." *Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* (quoting *Wilton v. Seven Falls*

*Co.*, 515 U.S. 277, 282, 115 S. Ct. 2137, 2140, 132 L. Ed. 2d 214 (1995)).

The Court agrees that Plaintiff's declaratory judgment action is duplicative of its underlying claims for substantive relief. Here, Plaintiff essentially seeks a declaration that the conduct described in its Complaint violates the FDCPA, the Illinois Mortgage Foreclosure Law, and the common law of trespass and conversion. (Compl. ¶¶ 104, 111,112.) As such, Plaintiff seeks a declaration on the issues that the Court will decide in addressing Plaintiff's substantive claims. District courts in this District routinely exercise their discretion to decline to hear declaratory judgment actions on this basis. *See S & A Futures, LLC--Series 2 v. Sysco Chicago, Inc.*, 11 C 7629, 2012 WL 851556, at *5 (N.D. Ill. Mar. 13, 2012) (declaratory judgment would "add[] nothing of substance" where plaintiff would have to establish its rights to protect the marks at issue to prevail on trademark claims); *Vill. of Sugar Grove v. F.D.I.C.*, No. 10 C 3562, 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) (dismissing declaratory judgment action when court would "necessarily address [the same] issues in adjudicating the Village's substantive claims."); *Pelfresne v. Vill. of Lindenhurst*, 03 C 6905, 2005 WL 2322228, at *6 (N.D. Ill. Sept. 16, 2005). Accordingly, the Court dismisses Plaintiff's declaratory judgment action.

## CONCLUSION

The Court grants in part and denies in part Defendants' Motion. The Court grants Defendants' Motion with respect to Plaintiff's request for declaratory relief, denies the Motion with respect to Count II for trespass to chattels, and grants in part and denies in part the Motion with respect to Count IV for violation of the FDCPA.

The Court will address the personal jurisdiction discovery schedule in ruling on Defendant Applebrook's pending Motion to Dismiss and Motion for a More Definite Statement.

**Date: March 29, 2013**

**ENTERED**

**AMY J. ST. EVE**

**United States District Court Judge**